IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| DALLAS V. BELL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )      1:10CV709 |
| | ) |
| CAROLYN W. COLVIN,[1] | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

MEMORANDUM OPINION AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

Plaintiff, Dallas Bell, brought this action pursuant to Sections 205(g) and 1631(c)(3) of

the Social Security Act (the "Act"), as amended (42 U.S.C. §§ 405(g) and 1383(c)(3)), to obtain

judicial review of a final decision of the Commissioner of Social Security denying her claims for

Disability Insurance Benefits and Supplemental Security Income under, respectively, Titles II

and XVI of the Act. The parties have filed cross-motions for judgment, and the administrative

record has been certified to the Court for review.

I.      PROCEDURAL HISTORY

Plaintiff protectively filed her applications for Disability Insurance Benefits and

Supplemental Security Income on March 21, 2007, alleging a disability onset date of March 6,

_____

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant
to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin should be substituted for Michael J.
Astrue as the Defendant in this suit. No further action need be taken to continue this suit by reason of the last
sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

2007. (Tr. 66-70, 71-74.)[2]  Her applications were denied initially (Tr. at 41, 42) and upon

reconsideration (Tr. at 43).  Thereafter, Plaintiff requested a hearing de novo before an

Administrative Law Judge ("ALJ").  (Tr. at 58-59.)  Plaintiff, along with her non-attorney

representative, attended the subsequent hearing on January 13, 2009.  (Tr. at 13.)  The ALJ

ultimately determined that Plaintiff was not disabled within the meaning of the Act (Tr. at 24)

and, on July 21, 2010, the Appeals Council denied Plaintiff's request for review of the decision,

thereby making the ALJ's conclusion the Commissioner's final decision for purposes of judicial

review (Tr. at 1-5).

In rendering his disability determination, the ALJ made the following findings later

adopted by the Commissioner:

> 1. The claimant met . . . the insured status requirements of the Social Security Act
> through December 31, 2008.
>
> 2. The claimant has not engaged in substantial gainful activity since March 6,
> 2007, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).
>
> 3. The claimant has the following severe impairments: edema, tendinitis, chronic
> obstructive pulmonary disease (20 CFR 404.1520(c) and 416.920(c)).
> . . . .
>
> 4. The claimant does not have an impairment or combination of impairments
> that meets or medically equals one of the listed impairments in 20 CFR Part 404,
> Subpart P, Appendix 1 (20 CFR 404.1525, 404.1526, 416.925 and 416.926).
> . . . .
>
> 5. After careful consideration of the entire record, the undersigned finds that the
> claimant has the residual functional capacity to perform medium work as defined
> in 20 CFR 404.1567(c) and 416.967(c) except she should only perform work
> requiring occasional exposure to heights, hazardous machinery, temperature

---

[2] Transcript citations refer to the Administrative Transcript of Record filed manually with the
Commissioner's Answer [Doc. #8].

extremes, humidity extremes, and excessive pollutants; and she should only occasionally climb ropes, ladders, and scaffolds.

(Tr. at 15, 18, 19.)

The ALJ then considered Plaintiff's age, education, work experience, and the above residual functional capacity ("RFC") and determined that Plaintiff remained capable of performing her past relevant work as a restaurant manager. (Tr. at 22.) The ALJ therefore concluded that Plaintiff was not under a "disability," as defined in the Act, from her alleged onset date through the date of the decision. (Tr. at 23.)

## II.   LEGAL STANDARD

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, the scope of review of such a decision is "extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). "The courts are not to try the case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ if they are supported by substantial evidence and were reached through application of the correct legal standard." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal quotation omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1993) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted). "If there is

evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Hancock, 667 F.3d at 472. "The issue before [the reviewing court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

In undertaking this limited review, the Court notes that "[a] claimant for disability benefits bears the burden of proving a disability." Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). In this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" Id. (quoting 42 U.S.C. § 423(d)(1)(A)).[3]

---

[3] "The Social Security Act comprises two disability benefits programs. The Social Security Disability Insurance Program (SSDI), established by Title II of the Act as amended, 42 U.S.C. § 401 et seq., provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program (SSI), established by Title XVI of the Act as amended, 42 U.S.C. § 1381 et seq., provides benefits to indigent disabled persons. The statutory definitions and the regulations promulgated by the Secretary for determining disability, see 20 C.F.R. pt. 404 (SSDI); 20 C.F.R. pt. 416 (SSI), governing these two programs are, in all aspects relevant here, substantively identical. " Craig, 76 F.3d at 589 n.1.

"The Commissioner uses a five-step process to evaluate disability claims." Hancock, 667 F.3d at 472 (citing 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4)). "Under this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy." Id.

A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at the first two steps, and if the claimant's impairment meets or equals a "listed impairment" at step three, "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment," then "the ALJ must assess the claimant's residual functional capacity ('RFC')." Id. at 179.[4] Step four then requires the ALJ to assess whether, based on that RFC, the

---

[4] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain)." Hines, 453 F.3d at 562-63.

claimant can "perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, which "requires the [Government] to prove that a significant number of jobs exist which the claimant could perform, despite the claimant's impairments." Hines, 453 F.3d at 563. In making this determination, the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.[5]

III.    DISCUSSION

In the present case, the ALJ found that Plaintiff had not engaged in "substantial gainful activity" since her alleged onset date. She therefore met her burden at step one of the sequential evaluation process. At step two, the ALJ further determined that Plaintiff suffered from the following severe impairments: edema, tendinitis, and chronic obstructive pulmonary disease. (Tr. at 15.) The ALJ found at step three that these impairments did not meet or equal a disability listing. Accordingly, he assessed Plaintiff's RFC and determined that Plaintiff could perform medium work as defined in 20 CFR §§ 404.1567(c) and 416.967(c) with further, nonexertional limitations. (Tr. at 19.) Because Plaintiff's past relevant work as a restaurant manager "does not

---

[5] A claimant thus can qualify as disabled via two paths through the five-step sequential evaluation process. The first path requires resolution of the questions at steps one, two, and three in the claimant's favor, whereas, on the second path, the claimant must prevail at steps one, two, four, and five.

require the performance of work-related activities precluded by" her RFC, the ALJ ultimately determined that Plaintiff could return to her past relevant work under step four of the analysis and was therefore not disabled.  (Tr. at 22.)

Plaintiff now argues that the ALJ erred in (1) rejecting the opinion of Dr. Gann, a non-examining State agency medical consultant, (2) failing to make a function-by-function assessment of Plaintiff's abilities when formulating her RFC, (3) failing to properly evaluate Plaintiff's subjective complaints when assessing her credibility, and (4) failing to provide specific findings regarding Plaintiff's ability to return to her past relevant work.  (Pl.'s Br. [Doc. #22] at 2.) Defendant contends otherwise and urges that substantial evidence supports the Commissioner's decision.  (Def.'s Br. [Doc. #24] at 17.)

A.    Opinion of Dr. Gann

Plaintiff first contends that the ALJ "never mention[ed], let alone consider[ed], the opinions of State agency medical consultant Richard L. Gann, M.D."  (Pl.'s Br. at 11) (citing Tr. at 210-225).  However, although the ALJ's decision never mentions Dr. Gann by name, the decision specifically discusses the findings of "the State agency psychological consultants" (Tr. at 18), and Dr. Gann was the only such consultant to review Plaintiff's case.

Moreover, the ALJ explicitly assigned little weight to Dr. Gann's opinion that Plaintiff was limited to simple, routine, repetitive tasks, stating that "[t]he medical evidence of record and the claimant's own statements indicate that she is capable of performing complex and detailed tasks."  (Tr. at 18.)  In the preceding paragraph of his opinion, the ALJ sets out the referenced medical evidence in detail while discussing the opinion of Dr. Duszlak, a consultative examiner

7

who, like Dr. Gann, found that Plaintiff could only perform simple, routine, repetitive tasks. (Tr. at 17-18.) The ALJ gave partial weight to Dr. Duszlak's opinion of Plaintiff's social limitations, but he discounted her opinion as to Plaintiff's memory and concentration based on the evidence as a whole. Notably, the ALJ then cited Dr. Gann's heavy reliance on Dr. Duszlak's ill-supported opinion as the reason for giving Dr. Gann's determination little weight. (Tr. at 18.) Plaintiff never challenges the ALJ's treatment of Dr. Duszlak's opinion. In the circumstances, the Court finds no error.

B.     RFC

Plaintiff next challenges the RFC set forth in the ALJ's decision, contending that the ALJ erred by failing to make a function-by-function assessment of Plaintiff's abilities as required by Social Security Ruling (hereinafter "SSR" or "Ruling") 96-8p. 61 FR 34474-01, 1996 WL 362207. According to this Ruling, "the RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis. . . . Only after that may RFC be expressed in terms of the exertional levels of work." 61 FR 34475. Ruling 96-8p specifically requires that the RFC assessment "address both the remaining exertional and nonexertional capacities of the individual" and further defines "exertional capacity" as "an individual's limitations and restrictions of physical strength and defines the individual's remaining abilities to perform each of seven strength demands: Sitting, standing, walking, lifting, carrying, pushing, and pulling." 61 FR 34477. Significantly, the Ruling notes that "[e]ach function must be considered separately." Id.

Nevertheless, as this Court explained in an analogous case,

> there is a distinction between what the ALJ must *consider* and what he must *articulate* in the decision. Ruling 96-8p contains a section entitled "Narrative Discussion Requirements" which details what an ALJ is required to articulate regarding a claimant's RFC. . . . The section does *not* require an ALJ to discuss all of a claimant's abilities on a function-by-function basis but, rather, only to "describe the maximum amount of each work-related activity the individual can perform *based on the evidence available in the case record.*" . . . An earlier provision in the Ruling places an even finer point on the issue: "When there is no allegation of a physical or mental limitation or restriction of a specific functional capacity, and no information in the case record that there is such a limitation or restriction, the adjudicator must consider the individual to have no limitation or restriction with respect to that functional capacity."

Joyce v. Astrue, No. 1:06CV27, 2009 WL 313345, at *14 (M.D.N.C. Feb. 5, 2009) (unpublished).

Here, the ALJ discussed Plaintiff's medical history in great detail, including its consistency, or lack thereof, and any resulting limitations. Specifically, his finding that Plaintiff can perform medium exertional level work - meaning that Plaintiff can lift and carry 50 pounds occasionally and 25 pounds frequently during an eight-hour day - is supported by the opinions of consultative examiner Dr. James Ho and State agency examiner Dr. Alan Cohen.[6] (Tr. at 20, 21-22, 199, 203.) Although Dr. Ho noted pain and a positive prayer sign upon examining Plaintiff's wrists, he also found that her grip was within normal limits, as were all other objective exam results. (Tr. at 199.) He therefore concluded that Plaintiff had "no limitation in functioning areas such as sitting, walking, lifting, and carrying at this time." (Id.) Dr. Cohen concurred with Dr. Ho, but also opined that Plaintiff was limited to frequent, but not continuous, handling and fingering. (Tr. at 203, 205, 208.) After discussing Dr. Ho and Dr.

_____

[6] Dr. Cohen is never named in the decision, but he provided the only assessment of Plaintiff's physical condition by a State agency consultant. (Tr. at 202-09.) Thus, the findings of "[t]he State agency consultants" referenced by the ALJ as to Plaintiff's physical limitations implicitly are those of Dr. Cohen. (Tr. at 21.)

Cohen's findings at length, the ALJ assigned great weight to both, noting their consistency with the medical evidence as a whole, but found that Dr. Cohen's restrictions as to handling and fingering were "based almost exclusively on [Plaintiff's] subjective complaints of pain, which are not substantiated or supported by the objective medical evidence or [Plaintiff's] treatment history." (Tr. at 21.)

The ALJ's decision also recounted the extensive limitations posited by Dr. John Williams and Sandra Shaver, a certified nurse practitioner, as to sitting, standing, walking, lifting, reaching, handling, pushing, pulling, and tolerating temperature and humidity extremes. (Tr. at 21.) The ALJ gave little weight to these opinions "because they cast little light upon [Plaintiff's] condition at the time of her onset," "were prepared after [Plaintiff's] date last insured," and were "not supported by [Plaintiff's] treatment history, which contains only minimal complaints of pain, which were generally associated with edema." (Id.) However, the ALJ did find that the overall medical evidence "suggest[ed] that [Plaintiff] has experienced some pain and numbness in her lower extremities and her arms due to edema" (Tr. at 20), and, viewing this evidence "in the light most favorable to [Plaintiff]," he found that Plaintiff "should be limited to medium work with only occasional climbing of ropes, ladders, and scaffolds" (Tr. at 21). The ALJ further found that Plaintiff's "chronic obstructive pulmonary disease justifies restricting [her] to only occasional exposure to excessive pollutants, temperature extremes, and humidity extremes," and that Plaintiff's "hypertension, although controlled, justifies restricting [her] to only occasional exposure to heights and hazards." (Tr. at 22.) These findings clearly "describe the maximum

amount of each work-related activity [Plaintiff] can perform based on the evidence available in the case record" as required by SSR 96-8p. Accordingly, the Court finds no error.

C.      Credibility

In her next argument, Plaintiff contends that the ALJ erred in finding that her subjective complaints were not entirely credible. In Craig, 76 F.3d at 594-95, the Fourth Circuit provides a two-part test for evaluating a claimant's statements about symptoms. "First, there must be objective medical evidence showing 'the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged.'" Id. at 594 (citing 20 C.F.R. §§ 416.929(b) & 404.1529(b)). In the present case, Plaintiff alleged pain, numbness, fatigue, and shortness of breath resulting from her documented edema, tendinitis, and COPD, and the ALJ determined that her impairments "could reasonably be expected to produce [her] alleged symptoms." (Tr. at 19.)

Plaintiff's case thus hinges on the second part of the test, which requires that the ALJ consider all available evidence, including Plaintiff's statements about her pain and other symptoms, in order to evaluate "the intensity and persistence of the [symptom], and the extent to which it affects her ability to work." Craig, 76 F.3d at 596.

Notably, while the ALJ must consider Plaintiff's statements and other subjective evidence at step two, he need not credit them "to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the pain the claimant alleges she suffers."

Id.  This approach facilitates the ALJ's ultimate goal, which is to accurately determine the extent

to which Plaintiff's pain or other symptoms limit her ability to perform basic work activities.

Thus, a plaintiff's "symptoms, including pain, will be determined to diminish [her] capacity for

basic work activities [only] to the extent that [her] alleged functional limitations and restrictions

due to symptoms, such as pain, can reasonably be accepted as consistent with the objective

medical evidence and other evidence." 20 C.F.R. § 404.1529(c)(4).  Relevant evidence for this

inquiry includes Plaintiff's "medical history, medical signs, and laboratory findings" Craig, 76

F.3d at 595, as well as the following factors set out in 20 C.F.R. § 404.1529(c)(3):

> (i) [Plaintiff's] daily activities;
>
> (ii) The location, duration, frequency, and intensity of [Plaintiff's] pain or other symptoms;
>
> (iii) Precipitating and aggravating factors;
>
> (iv) The type, dosage, effectiveness, and side effects of any medication [Plaintiff] take[s] or [has] taken to alleviate [her] pain or other symptoms;
>
> (v) Treatment, other than medication, [Plaintiff] receive[s] or [has] received for relief of [her] pain or other symptoms;
>
> (vi) Any measures [Plaintiff] use[s] or [has] used to relieve [her] pain or other symptoms (e.g., lying flat on [her] back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and
>
> (vii) Other factors concerning [Plaintiff's] functional limitations and restrictions due to pain or other symptoms.

Where the ALJ has considered these factors and has heard Plaintiff's testimony and observed

her demeanor, the ALJ's credibility determination is entitled to deference.  See Shively v.

Heckler, 739 F.2d 987, 989 (7th Cir. 1984).  Accordingly, the Court "will reverse an ALJ's

credibility determination only if the [plaintiff] can show it was 'patently wrong.'" Powers v.

Apfel, 207 F.3d 431, 435 (7th Cir. 2000).

Despite these guidelines, Plaintiff now argues that under Hines v. Barnhart, 453 F.3d at

565, (1) she was entitled to rely exclusively on subjective evidence of her pain and other

symptoms at step two of the Craig analysis, and (2) the ALJ erred by "selectively cit[ing]"

evidence from the medical records that contradicted her subjective complaints. (Pl.'s Br. at 15-

17.) However, as other reviewing courts have held under similar circumstances,

> [t]his reliance on Hines is misplaced. The Court agrees with plaintiff that Hines
> does stand for the proposition that a claimant can rely exclusively on subjective
> complaints, in some circumstances. However, the Fourth Circuit in Hines also
> notes that, "[a]lthough a claimant's allegations about her pain may not be
> discredited solely because they are not substantiated by objective evidence of the
> pain itself or its severity, they need not be accepted to the extent they are
> inconsistent with the available evidence." Hines, 453 F.3d at 565. Therefore,
> even though plaintiff's subjective complaints may demonstrate the requisite
> intensity and severity at step two, *if there is significant evidence that contradicts his*
> *subjective complaints, the ALJ may, indeed must, consider that evidence in conjunction with the*
> *subjective evidence.* The plaintiff in Hines was able to prove through objective
> medical evidence that he was afflicted by the unique disease of Sickle Cell Disease
> ("SCD"), and because there is no way for an SCD patient to objectively
> demonstrate pain, he was allowed to exclusively rely on subjective evidence of
> pain. Id. at 562 and 565. Further, and critically for our purposes here, the
> Commissioner in Hines did not present any objective evidence that contradicted
> the subjective complaints of Hines. Hines, 453 F.3d 559. In the case at bar, there
> is a significant amount of evidence in the record that either contradicts plaintiff's
> subjective complaints or demonstrates inconsistency in plaintiff's subjective
> complaints and should be taken into account by the ALJ. Consequently, Hines
> is not dispositive here.

Gowans v. Astrue, Civil No. SKG-06-2817, 2008 WL 179479, at*11 (D. Md. Jan 17, 2008)

(unpublished) (emphasis added); see also McLamb v. Astrue, No. 5:08-CV-305-FL, 2009 WL

2046062, at *9 (E.D.N.C. July 14, 2009) (unpublished); <u>Wetmore v. Astrue</u>, No. 5:09-CV-38,

2009 WL 6449319, at *22 (N.D. W. Va. Oct. 26, 2009) (unpublished).

In the present case, a thorough review of the ALJ's decision and the record as a whole

reveals that the ALJ did, in fact, properly consider objective medical evidence contrary to

Plaintiff's claims in conjunction with the subjective evidence as required by <u>Hines</u>.  In terms of

Plaintiff's physical symptoms,[7] the ALJ notes that "[t]he medical evidence of record does suggest

that the claimant has experienced some pain and numbness in her lower extremities due to

edema."  (Tr. at 20.)  Specifically, he cites to the treatment notes provided by Dr. Andrews,

which indicated decreased sensation in Plaintiff's lower extremities on at least one occasion, and

the consultative exam notes provided by Dr. Ho, which noted some edema in Plaintiff's ankle,

some pain in her wrists, and a positive prayer sign along with a diagnosis of tendinitis.  (<u>Id.</u>)

However, Plaintiff's treatment notes overall indicated only mild edema which improved over

time.  (<u>Id.</u>)  Also, as noted above, both Dr. Ho and the State agency consultant found that, even

at the height of Plaintiff's complaints, her impairments did not limit her ability to sit, walk, lift,

or carry.  (Tr. at 20, 21-22, 199, 203.)  Indeed, Plaintiff sought only occasional treatment for her

edema and pain, required only minimal use of pain medications, and continued to perform a

wide range of daily activities, including shopping three to four times per week, visiting with

---

[7] Plaintiff's credibility challenge is focused on her physical symptoms, and the ALJ did not include any mental impairments among those that "could reasonably be expected to produce [Plaintiff's] alleged symptoms" at step one of the <u>Craig</u> analysis.  Moreover, to the extent that Plaintiff may be contending that her alleged mental symptoms merited further consideration, such contentions fail at <u>Craig</u> step two in any event.  Specifically, with respect to Plaintiff's mental health symptoms, the ALJ discussed at length the evidence in the record, which indicated that Plaintiff's complaints to her physicians about her mental health symptoms were "virtually non-existent," that she was not seeing a psychiatrist or therapist, that her symptoms were stable, that she reported significant daily activities, and that the findings on her mental health examination were minimal.  (Tr. at 16-17.)

14

family and friends, and performing household chores.[8] (Tr. at 17, 19, 20, 115-19, 131-34.) These factors further support the ALJ's finding that Plaintiff's symptoms were less limiting than alleged.

Plaintiff criticizes the ALJ's consideration of her daily activities and the circumstances under which she stopped working. With regard to her daily activities, Plaintiff correctly argues that she need not be "an invalid" in order to be considered disabled. Nevertheless, as set out above, the Social Security regulations specifically require an ALJ to consider a claimant's daily activities when assessing credibility. 20 C.F.R. §§ 404.1529(c)(3)(i) and 416.929(c)(3)(i). Although household chores and the like cannot be directly equated to working an 8-hour day, an ALJ must "juxtapose the claimant's subjective allegations of pain with the relative intensity of [her] daily regimen" in order to understand "the relationship between the medically determinable impairment, the alleged pain, and the [claimant's] ability to work." St. Pierre v. Shalala, No. CV-94-232-JD, 1995 WL 515515, at *3-4 (D.N.H. May 25, 1995) (unpublished). Here, the ALJ specifically noted the reports of Plaintiff and her husband concerning her activity level, which provide at least some evidence that her impairments were less debilitating than alleged, particularly when considered together with the additional evidence set out above.

Plaintiff's contentions regarding the circumstances under which her restaurant closed is equally unavailing. In particular, she questions the reasonableness of an inference the ALJ drew from the record. (See Pl.'s Br. at 14-15.) In this regard, although Plaintiff testified that she

---

[8] The ALJ's decision states that Plaintiff has not been treated with pain medications. (Tr. at 20.) Dr. Andrews did, in fact, prescribe Neurontin to Plaintiff in 2008 (Tr. at 273), more than 19 months after her alleged onset date, but the record does not otherwise include evidence of pain prescriptions. Such limited use of pain medication does not render the ALJ's credibility finding unsupported.

15

closed her restaurant because she was in pain and "dropping stuff," including a pot of hot grease on one occasion (Tr. at 34-35), the ALJ's decision notes that Plaintiff "reported only earning $3000 a year as owner of her restaurant, which suggests that [she] may have decided to close the restaurant for financial reasons as much as for her inability to perform the work required of her as an owner of the restaurant" (Tr. at 21). Plaintiff now contends that such reasoning violated SSRs 82-56 and 86-8, which caution that "presumptions, speculations, and suppositions should not be substituted for evidence."

Despite this admonition, not every inference results in error. In fact, the ALJ has the responsibility to draw inferences from, and resolve conflicts in, the record when evaluating a plaintiff's credibility. Hammond v. Heckler, 765 F.2d 424, 426 (4th Cir.1985) (citing Smith v. Schweiker, 719 F.2d 723, 725 n. 2 (4th Cir.1984)). When challenging an ALJ's exercise of that authority, a plaintiff must show that the ALJ either ignored crucial portions of the record or that his credibility finding was not supported by the evidence in the record. See Shively v. Heckler, 739 F.2d 987, 989 (4th Cir.1984); Basu–Dugan v. Astrue, No. 1:06CV00007, 2008 WL 3413296, at *6 (M.D.N.C. Aug. 8, 2008) (unpublished).

In the present case, Plaintiff makes no such showing. Significantly, the $3000 quoted by the ALJ came from Plaintiff's Disability Report, which reported this amount as her yearly earnings as owner of her own restaurant between 2003 and her alleged onset date, despite her reports of working 84 hours per week. (Tr. at 110.) In stark contrast, Plaintiff averaged only 40 hours a week during her 24 years as a restaurant manager, yet earned $35,000 per year during that period. (Id.) Given this evidence, the Court cannot conclude that it was patently

16

unreasonable for the ALJ to infer that finances played at least a partial role in Plaintiff's decision to close her restaurant. Furthermore, the ALJ specifically stated in his decision that his "hypothesis is supported by the fact that the medical evidence of record does not indicate that [Plaintiff] sought any treatment for pain until three months after her restaurant closed and had even reported doing well during a prior visit to her physician in October of 2006."[9] (Tr. at 21.) In light of all of the above factors, substantial evidence supports the ALJ's credibility determination.

D.    Past Relevant Work

Finally, Plaintiff argues that the ALJ erred in finding that Plaintiff could return to her past relevant work as a restaurant manager. At step four of the sequential analysis, the plaintiff has the burden of showing that she can no longer perform her past relevant work. 20 C.F.R. § 416.920(e); Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1993) (noting that through step four of the SEP, Plaintiff carries the burden of production and proof). Nevertheless, "the ALJ still has a duty to make the requisite factual findings to support his conclusion." Pinto v. Massanari, 249 F.3d 840, 844 (9th Cir. 2001) (citing SSR 82-62; 20 C.F.R. §§ 416.971, 416.974, and 416.965.) "[I]n finding that an individual has the capacity to perform a past relevant job, the [ALJ's] decision must include a specific 'finding of fact as to the physical and mental demands of the past job'" as well as analysis of whether that individual's RFC would impact her ability to

---

[9] As noted in Plaintiff's brief, Plaintiff testified that she stopped working "before" the restaurant closed. (See Pl.'s Br. at 14, Tr. at 35.) Although Plaintiff suggests that this statement somehow negates the ALJ's hypothesis as to her financial motives for closing her restaurant, the testimony in question appears to refer to the Shoney's restaurant where Plaintiff worked prior to opening her own diner, Ham & Eggs. In any event, Plaintiff repeatedly reported that she stopped working on March 6, 2007, and closed the diner on that same day. (Tr. at 69, 100.)

perform such a job.  Alderman v. Barnhart, 297 F. Supp. 2d 876, 879 (W.D. Va. 2003) (citing SSR 82-62).

Plaintiff claims that the ALJ never "review[ed] or discuss[ed] any of the mental and physical demands of Ms. Bell's prior relevant work other than to use the generic terms 'light' and 'SVP 7.'"[10] (Pl.'s Br. at 6.)  However, after setting forth his finding that Plaintiff is able to perform her past relevant work as both (1) actually and (2) generally performed, the ALJ then devotes an entire paragraph of his decision to support each of these findings.  (Tr. at 22.)  In discussing Plaintiff's work as actually performed, he recounts Plaintiff's own statements, in which she first stated that in her prior position, she was required to lift up to 20 pounds occasionally, and then later stated that she was required to lift 50 pounds occasionally and 10 pounds frequently.  (Tr. 22, 110, 124.)  The forms referenced by the ALJ included Plaintiff's detailed descriptions of the position as actually performed, and the ALJ took note of Plaintiff's statements that her work as a restaurant manager "required her to supervise others and deal with the public."  (Tr. at 22.)

In assessing Plaintiff's past work as generally performed, the ALJ did, as Plaintiff asserts, note that Plaintiff's "work as a restaurant manager was SVP 7 in nature and light in exertion according to the Dictionary of Occupational Titles (#187.167-106.)"  (Tr. at 22.)  However, he

---

[10] The "SVP," or "special vocational preparation" level, for a given job is defined in the DOT as "the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation." Dictionary of Occupational Titles, Appendix C, page 1009 (4th ed. 1991). SVP 7 means "over 2 years up to and including 4 years," which corresponds to skilled work, as defined in 20 C.F.R. §§ 404.1568 and 416.968. Id.; SSR 00-4p, 2000 WL 1898704 at *3 ("skilled work corresponds to an SVP of 5-9 in the DOT").

then goes on to compare all facets of Plaintiff's RFC with the requirements of Plaintiff's past work as follows:

> The claimant's [RFC] is for medium exertion, and her restrictions from concentrated exposure to pollutants, from concentrated exposure to temperature extremes, from concentrated exposure to humidity extremes, and from frequent climbing of ropes, ladders, and scaffolds would not interfere with her ability to perform the work of a restaurant manager as she described it and as it is generally performed in the national economy.

(Tr. at 22.) From these findings, it is clear that substantial evidence supports the ALJ's finding at step four. Contrary to Plaintiff's assertions, the ALJ adequately stated the physical and mental requirements of her past relevant work and documented his evaluation of Plaintiff's ability to meet those demands. Moreover, the ALJ made an alternative, step five finding that Plaintiff could also perform other jobs available in significant numbers in the national economy. (Tr. at 22-23.) Plaintiff does not challenge this finding, and no error is apparent from a review of the record. Thus, even if the ALJ had erred at step four, his alternative step five finding renders such error harmless.

IT IS THEREFORE RECOMMENDED that the Commissioner's decision finding no disability be AFFIRMED, that Plaintiff's Motion for a Judgment Reversing the Commissioner [Doc. #21] be DENIED, that Defendant's Motion for Judgment on the Pleadings [Doc. #23] be GRANTED, and that this action be DISMISSED with prejudice.

This, the 2nd day of February, 2015.

/s/ Joi Elizabeth Peake
United States Magistrate Judge
